SPENCER WILLIAMS,

        Petitioner,                      Hon. Janet T. Neff

v.                                         Case No. 1:09-CV-1139

HUGH WOLFENBARGER,

        Respondent.

_____/

## REPORT AND RECOMMENDATION

        This matter is before the Court on Williams' petition for writ of habeas corpus. In accordance with 28 U.S.C. § 636(b) authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of prisoner petitions, the undersigned recommends that Williams' petition be **granted**.

## BACKGROUND

        On December 8, 2007, Daniel Garcia was killed.  As a result of the events that resulted in Garcia's death, Petitioner was charged with (1) first degree murder; (2) armed robbery; and (3) being an habitual felon.  Petitioner subsequently agreed to a plea bargain in which he agreed to plead guilty to second degree murder.  (Plea Transcript, March 3, 2009, 3-16).  In return, the prosecution agreed to dismiss the other charges and make a favorable sentencing recommendation if Petitioner cooperated in the continuing investigation of Garcia's killing.  (Tr. at 3-7).

At the sentencing hearing, Petitioner (through counsel) moved to withdraw his guilty plea on the ground that he "wasn't thinking clearly" when he made the decision to plead guilty. (Sentencing Hearing, March 25, 2009, 4-6). As Petitioner himself stated, he "did not plan or plot for Dan to die." (Tr. 6-9). Finding that Petitioner's guilty plea was "voluntarily made, understanding, knowing, [and] willing," the trial judge denied Petitioner's motion. (Tr. at 12-13). Petitioner was sentenced to serve life in prison. (Tr. 19). Asserting the following claims, Petitioner later moved in the Michigan Court of Appeals for leave to appeal his convictions:

> I.  Did the trial court err in denying Mr. Williams' motion to withdraw his plea where the plea was not knowing and voluntary and where the prosecutor made no showing that the People would suffer substantial prejudice?

The Michigan Court of Appeals denied Petitioner's application for leave to appeal "for lack of merit in the grounds presented." *People v. Williams*, No. 292308, Order (Mich. Ct. App., July 2, 2009). Asserting the same claim, Petitioner later moved in the Michigan Supreme Court for leave to appeal. The court denied Petitioner's request, stating that "we are not persuaded that the question presented should be reviewed by this Court." *People v. Williams,* No. 139459, Order (Mich., Nov. 23, 2009). On December 21, 2009, Petitioner initiated the present action in which he asserts the aforementioned claim.

## STANDARD OF REVIEW

Williams' petition is subject to the provisions of the Antiterrorism and Effective Death Penalty Act (AEDPA), as it amended 28 U.S.C. § 2254. The AEDPA amended the substantive standards for granting habeas relief under the following provisions:

> (d)  An application for a writ of habeas corpus on behalf of a

2

person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The AEDPA has "modified" the role of the federal courts in habeas proceedings to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

Pursuant to § 2254(d)(1), a decision is "contrary to" clearly established federal law when "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at an opposite result." *Ayers v. Hudson*, 623 F.3d 301, 307 (6th Cir. 2010) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)).

Prior to *Williams*, the Sixth Circuit interpreted the "unreasonable application" clause of § 2254(d)(1) as precluding habeas relief unless the state court's decision was "so clearly incorrect that it would not be debatable among reasonable jurists." *Gordon v. Kelly*, 2000 WL 145144 at *4 (6th Cir., February 1, 2000); *see also*, *Blanton v. Elo*, 186 F.3d 712, 714-15 (6th Cir. 1999). The *Williams* Court rejected this standard, indicating that it improperly transformed the "unreasonable application" examination into a subjective inquiry turning on whether "at least one of the Nation's

jurists has applied the relevant federal law in the same manner" as did the state court. *Williams*, 529 U.S. at 409.

In articulating the proper standard, the Court held that a writ may not issue simply because the reviewing court "concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams,* 529 U.S. at 411. Rather, the Court must also find the state court's application thereof to be *objectively* unreasonable. *Bell*, 535 U.S. at 694; *Williams*, 529 U.S. at 409-12. Accordingly, a state court unreasonably applies clearly established federal law if it "identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case" or if it "either unreasonably extends or unreasonably refuses to extend a legal principle from the Supreme Court precedent to a new context." *Ayers*, 623 F.3d at 307. Furthermore, review under § 2254(d)(1) "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, - - - S.Ct. - - -, 2011 WL 1225705 at *8 (Apr. 4, 2011).

Pursuant to 28 U.S.C. § 2254(d)(2), when reviewing whether the decision of the state court was based on an unreasonable determination of the facts in light of the evidence presented, the "factual determination by [the] state courts are presumed correct absent clear and convincing evidence to the contrary." *Ayers*, 623 F.3d at 308. Accordingly, a decision "adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." While this standard is "demanding" it is "not insatiable." *Id.*

For a writ to issue pursuant to § 2254(d)(1), the Court must find a violation of clearly

established federal law "as set forth by the Supreme Court at the time the state court rendered its decision." *Stewart v. Irwin*, 503 F.3d 488, 493 (6th Cir. 2007). This definition of "clearly established federal law" includes "only the holdings of the Supreme Court, rather than its dicta." *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). Nevertheless, "the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart*, 503 F.3d at 493.

As previously noted, § 2254(d) provides that habeas relief "shall not be granted with respect to any claim that was adjudicated on the merits" unless the petitioner can satisfy the requirements of either § 2254(d)(1) or § 2254(d)(2). This provision, however, "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington v. Richter*, 131 S.Ct. 770, 785 (2011). Instead, when a federal claim has been presented to a state court and the state court has denied relief, "it may be presumed that the state court adjudicated the claim on the merits." *Id.* at 784-85. Where such is the case, the Court must apply the deferential standard of review articulated above, rather than some other less deferential standard.

The presumption that the state court "adjudicated [a] claim on the merits" may be overcome only "when there is reason to think some other explanation for the state court's decision is more likely." *Id.* If this presumption is overcome, however, the Court reviews the matter de novo. *See Wiggins v. Smith*, 539 U.S. 510, 533-35 (2003) (reviewing habeas issue *de novo* where state courts had not reached the question); *see also, Maples v. Stegall*, 340 F.3d 433, 437 (6th Cir. 2003) (recognizing that *Wiggins* established *de novo* standard of review for any claim that was not addressed by the state courts).

As previously noted, Petitioner moved in the trial court to withdraw his guilty plea on the ground that he "wasn't thinking clearly" when he made the decision to plead guilty. The Court interprets Petitioner's motion as asserting the claim that his decision to plead guilty was not knowing and voluntary. The trial judge certainly seemed to interpret the motion as such finding that Petitioner's guilty plea was "voluntarily made, understanding, knowing, [and] willing." Thus, while neither the Michigan Court of Appeals nor the Michigan Supreme Court addressed the merits of Petitioner's claim, such was addressed by the trial court. Petitioner's habeas claim is, therefore, subject to the deferential standard of review discussed above.

A further point of clarification regarding the nature of Petitioner's claim is perhaps necessary. As is well recognized, "the question of whether a plea of guilty has been entered voluntarily within the meaning of the Constitution is often a complex one that involves mixed questions of law and fact." *Oyague v. Artuz*, 393 F.3d 99, 104 (2nd Cir. 2004). As is equally well recognized, however, "the governing standard as to whether a plea of guilty is voluntary for purposes of the federal Constitution is a question of federal law and not a question of fact." *Marshall v. Lonberger*, 459 U.S. 422, 431 (1983) (internal citation omitted); *see also*, *United States v. Dixon*, 479 F.3d 431, 434 (6th Cir. 2007) ("[t]he issue of whether a plea was knowing, voluntary, and intelligent is a legal question"); *United States v. Ward*, 518 F.3d 75, 80 (1st Cir. 2008) (same); *United States v. Khan*, 328 Fed. Appx. 704, 706 (2nd Cir., June 1, 2009) (same); *Platta v. Janecka*, 387 Fed. Appx. 850, 852 (10th Cir., July 19, 2010) (same).

Petitioner is challenging the legal determination by the trial court that his guilty plea was knowing and voluntary, rather than any factual findings upon which the court's determination rests. Thus, Petitioner's claim is subject to the standard articulated in § 2254(d)(1). As such,

Petitioner is not entitled to an evidentiary hearing, but must instead establish his right to relief by reference only to the record as it existed at the time of the trial court's determination. *See Pinholster*, 2011 WL 1225705 at *8 (review under § 2254(d)(1) "is limited to the record that was before the state court that adjudicated the claim on the merits").

## ANALYSIS

As previously noted, Petitioner was initially charged with first degree murder, armed robbery, and being an habitual felon. Petitioner subsequently agreed to a plea bargain in which he pleaded guilty to second degree murder in return for the dismissal of the other charges and a potential sentencing recommendation. Petitioner asserts that his conviction must be set aside because the trial judge improperly denied his motion to withdraw his guilty plea. Petitioner argues that the trial judge should have granted his motion to withdraw because his guilty plea was involuntarily made without sufficient understanding thereof.

A guilty plea "operates as a waiver of important rights" and, therefore, "is valid only if done voluntarily, knowingly, and intelligently with sufficient awareness of the relevant circumstances and likely consequences." *Bradshaw v. Stumpf*, 545 U.S. 175, 182-83 (2005) (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)). A plea is not voluntary in the constitutional sense "unless the defendant received 'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process.'" *Henderson v. Morgan*, 426 U.S. 637, 644-45 (1976) (quoting *Smith v. O'Grady* 312 U.S. 329, 334 (1941)). The Supreme Court has held that "[w]here a defendant pleads guilty to a crime without having been informed of the crime's elements, [the constitutional] standard is not met and the plea is invalid."

*Stumpf*, 545 U.S. at 183 (citing *Henderson*, 426 U.S. 327).

The Supreme Court has never held, however, that the judge must herself inform the defendant of the elements of the crime to which he has agreed to plead guilty. *See Stumpf*, 545 U.S. at 183. While such would certainly satisfy the constitutional requirement that a criminal defendant be informed of the specific elements of the offense to which he is pleading guilty, the Court has stated that "[w]here a defendant is represented by competent counsel, the court usually may rely on that counsel's assurance that the defendant has been properly informed of the nature and elements of the charge to which he is pleading guilty." *Stumpf*, 545 U.S. at 183. The Court has further observed that "even without such an express representation [that the defendant has been informed of the elements of the crime to which he is pleading guilty], it may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit." *Henderson*, 426 U.S. at 647.

Respondent bears the burden of establishing that Petitioner's guilty plea was voluntary, intelligent, and knowing. *See Stumpf v. Mitchell*, 367 F.3d 594, 600 (6th Cir. 2004) (*reversed in part on other grounds by Bradshaw v. Stumpf*, 545 U.S. 175 (2005)). This burden is generally satisfied "by producing a transcript of the state court proceeding," because "[a] state court finding that the plea was proper is accorded a presumption of correctness, unless the transcript of the plea proceeding is inadequate to demonstrate that the plea was voluntary, intelligent and knowing." *Stumpf*, 367 F.3d at 600 (citing *Garcia v. Johnson*, 991 F.2d 324, 326-27 (6th Cir. 1993)). As discussed below, Respondent cannot meet his burden in establishing that Petitioner's guilty plea was voluntary, intelligent, and knowing. Specifically, Respondent cannot establish that Petitioner was ever informed of the nature or elements of second degree murder, the crime to which

he pleaded guilty.

On February 19, 2010, Respondent was ordered to answer Williams' petition and to do so in compliance with Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts. Rule 5 provides, in relevant part, that "[t]he respondent must attach to the answer parts of the transcript that the respondent considers relevant." In his answer to Williams' petition, Respondent submitted the transcripts of three state court proceedings: (1) a September 15, 2008 status conference; (2) the March 3, 2009 plea hearing;[1] and (3) Petitioner's March 25, 2009 sentencing. For purposes of assessing whether Petitioner's guilty plea is constitutionally sufficient, only matters occurring prior to the entry of Petitioner's guilty plea are relevant. *See McAdoo v. Elo*, 365 F.3d 487, 495 (6th Cir. 2004).

A review of the status hearing and plea hearing transcripts reveals that the trial judge never identified or described for Petitioner the elements of second degree murder or discussed the nature of this offense. The judge did not inquire whether anybody else discussed the matter with Petitioner. These transcripts reveal no evidence that Petitioner's counsel ever discussed with Petitioner the elements or nature of second degree murder. There is nothing in these transcripts from which it can reasonably be concluded that anybody ever explained to Petitioner the elements or nature of the crime of second degree murder. Finally, while it *may* in certain circumstances be appropriate to simply presume that defense counsel adequately explained to his client the nature of the offense to which he later pleaded guilty, the Court finds that such a presumption is not warranted in this instance.

---

[1] During the plea hearing, Petitioner's counsel states that "the offer was placed on the record. . .yesterday morning." (Plea Hearing, March 3, 2009, 7). If any record of such exists, however, Respondent has failed to provide it to the Court.

Petitioner was not originally charged with second degree murder, but was instead initially charged with armed robbery and first degree murder. Considering that Petitioner was formally charged with armed robbery and first degree murder, it may not be unreasonable to presume that either the court or defense counsel discussed the elements or nature of these offenses with Petitioner prior to the plea hearing. However, there is no evidence in the record that Petitioner was ever formally charged with second degree murder. Thus, there is no reason to presume that defense counsel or the court ever discussed with Petitioner the elements or nature of second degree murder in the normal course of events.

A review of the record also reveals that Petitioner did not appear to have a very good working relationship with his attorney. At the September 15, 2008 status conference, Petitioner stated that "since day one we haven't been seeing eye to eye." (Status Hearing, September 15, 2008, 3). Petitioner also stated that his attorney had "been hollering at me." (Tr. 3). At the plea hearing, defense counsel acknowledged that he "obviously [does not] have much control over [Petitioner]." (Plea Hearing, March 3, 2009, 4). Petitioner consistently alleged that he was not involved in Garcia's killing and did not intend for Garcia to die. (Status Hearing, September 15, 2008, 3-4; Plea Hearing, March 3, 2009, 18). Petitioner also made statements at the plea hearing that call into question the extent to which Petitioner understood what was occurring. For example, at one point, Petitioner stated, "I don't understand what's going on." (Plea Hearing, March 3, 2009, 11). Petitioner later stated, "I mean, I'm goin' crazy right now, I mean, I really am goin' insane at this moment, man, I'm really flippin'." (Tr. 16).

In sum, the Court discerns nothing in the record that would warrant the presumption that anybody adequately explained to Petitioner the elements or nature of second degree murder.

The Court concludes, therefore, that Petitioner's decision to plead guilty to second degree murder was not a voluntary and knowing decision. A closer examination of controlling Supreme Court authority on the issue underscores the Court's conclusion.

In *Henderson v. Morgan*, 426 U.S. 637 (1976), Timothy Morgan was charged with first degree murder in the killing of Ada Francisco. *Id.* at 638-42. Asserting that a charge of manslaughter was more appropriate, Morgan's attorney attempted to broker a plea bargain which would permit Morgan to plead guilty to manslaughter. *Id.* at 642. The prosecution countered with a plea bargain pursuant to which Morgan would plead guilty to second degree murder. While "[t]he lawyers gave [Morgan] advice about the different sentences which could be imposed for the different offenses," they "did not explain the required element of intent." Morgan subsequently appeared in court and pleaded guilty to second degree murder. Morgan stated that he was doing so on the advice of his attorneys. *Id.* Morgan acknowledged killing Francisco. *Id.* at 646. While the judge apparently discussed with Morgan certain aspects of his decision to plead guilty, "[t]here was no discussion of the elements of the offense of second-degree murder, no indication that the nature of the offense had ever been discussed with [Morgan], and no reference of any kind to the requirement of intent to cause the death of the victim." *Id.* at 642-43.

The court accepted Morgan's guilty plea and sentenced him to serve 25 years to life in prison. *Id.* at 638. Morgan later sought relief in the state courts, without success, on the ground that his guilty plea was involuntary. *Id.* at 638-39. Morgan then filed a petition for writ of habeas corpus in United States District Court. *Id.* at 639. The district court eventually granted Morgan's petition, a decision affirmed by the court of appeals. *Id.* at 639-40. The matter was then appealed to the United States Supreme Court which affirmed the decision to grant Morgan habeas relief. The

relevant portion of the Court's analysis is as follows:

> The charge of second-degree murder was never formally made. Had it been made, it necessarily would have included a charge that respondent's assault was "committed with a design to effect the death of the person killed." That element of the offense might have been proved by the objective evidence even if respondent's actual state of mind was consistent with innocence or manslaughter. But even if such a design to effect death would almost inevitably have been inferred from evidence that respondent repeatedly stabbed Mrs. Francisco, it is nevertheless also true that a jury would not have been required to draw that inference. The jury would have been entitled to accept defense counsel's appraisal of the incident as involving only manslaughter in the first degree. Therefore, an admission by respondent that he killed Mrs. Francisco does not necessarily also admit that he was guilty of second-degree murder.
>
> There is nothing in this record that can serve as a substitute for either a finding after trial, or a voluntary admission, that respondent had the requisite intent. Defense counsel did not purport to stipulate to that fact; they did not explain to him that his plea would be an admission of that fact; and he made no factual statement or admission necessarily implying that he had such intent. In these circumstances it is impossible to conclude that his plea to the unexplained charge of second-degree murder was voluntary.

*Id.* at 645-46 (internal footnotes omitted).

The similarities between the facts in *Henderson* and the present case are inescapable. Neither Petitioner nor Morgan were formally charged with the crime to which they ultimately pleaded guilty. The record in both cases reveals that neither Petitioner nor Morgan were informed of the elements or nature of the crime to which they pleaded guilty. Just as Morgan's statements did not necessarily constitute an admission that he committed second degree murder, Petitioner's allocution testimony does not necessarily constitute an admission that he committed second degree murder.

Under Michigan law in effect as of the date of Daniel Garcia's killing, the elements

of second degree murder were as follows: (1) a death; (2) caused by an act of the defendant; (3) with malice; and (4) without justification. *People v. Mendoza*, 664 N.W.2d 685, 689 (Mich. 2003). Manslaughter, on the other hand, "is murder without malice." *Id.* at 689. Common law voluntary manslaughter was defined at the time as an intentional killing "committed under the influence of passion or in heat of blood, produced by an adequate or reasonable provocation, and before a reasonable time has elapsed for the blood to cool and reason to resume its habitual control, and is the result of the temporary excitement, by which the control of reason was disturbed, rather than of any wickedness of heart or cruelty or recklessness of disposition." *Id.* at 690. Michigan law also provides that "[a] person who wounds, maims, or injures another person by discharging a firearm that is pointed or aimed intentionally but without malice at another person is guilty of manslaughter if the wounds, maiming, or injuries result in death." Mich. Comp. Laws § 750.329.

When Petitioner allocuted, he admitted to only the following: (1) he and Davel Johnson planned to steal marijuana from Daniel Garcia; (2) Johnson shot Garcia; and (3) Johnson robbed Garcia. (Plea Hearing, March 3, 2009, 18). No evidence or testimony was presented or elicited that Petitioner knew or had reason to know that Johnson would be armed or that either Johnson or Petitioner intended to harm Garcia. Likewise, no evidence or testimony was presented or elicited concerning the events preceding the shooting. Furthermore, Petitioner's testimony is silent concerning his intent. Just as in *Henderson*, while Petitioner's testimony would perhaps support a finding that he committed second degree murder, a jury could also have concluded that such constituted manslaughter (or perhaps no crime at all).

As previously noted, the trial court denied Petitioner's motion to withdraw his guilty plea on the ground that such was "voluntarily made, understanding, knowing, [and] willing." The

Michigan Court of Appeals and the Michigan Supreme Court declined to review the merits of Petitioner's claim that his guilty plea was not knowing and voluntary. For the reasons articulated herein, the undersigned concludes that the decision by the trial judge that Petitioner's guilty plea was made voluntarily, knowingly, and intelligently is contrary to, and/or involves an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. Accordingly, the undersigned recommends that Williams' petition for writ of habeas corpus be **granted**.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that Petitioner's guilty plea to the charge of second degree murder is involuntary and unconstitutional. Accordingly, the undersigned recommends that Williams' petition for writ of habeas corpus be **granted** and he be permitted to withdraw his guilty plea. The undersigned further recommends that within 90 days Petitioner be tried for the crimes with which he was originally charged (or that such be otherwise resolved) or released from custody.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: April 20, 2011          /s/ Ellen S. Carmody
                                                   ELLEN S. CARMODY
                                                   United States Magistrate Judge