UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SPENCER WILLIAMS #483474,

    Petitioner,                                          Case No. 1:09-cv-1139

v                                                            HON. JANET T. NEFF

HUGH WOLFENBARGER,

    Respondent.

_____/

## OPINION

This is a state prisoner's habeas corpus petition pursuant to 28 U.S.C. § 2254, in which Petitioner claims that the state court's denial of his motion to withdraw his guilty plea violated his constitutional Due Process rights (Pet'r Compl., Dkt 1). The matter was referred to the Magistrate Judge, who issued a Report and Recommendation (R & R) recommending that this Court grant the petition (R & R, Dkt 23). The matter is presently before the Court on Respondent's objections to the Report and Recommendation (Resp't Obj., Dkt 25). In accordance with 28 U.S.C. § 636(b)(1) and FED. R. CIV. P. 72(b)(3), the Court has performed de novo consideration of those portions of the Report and Recommendation to which objections have been made. The Court denies the objections and issues this Opinion and Final Order, granting a conditional writ of habeas corpus to Petitioner. *See* RULES GOVERNING § 2254 CASES, Rule 11 (referring to the order disposing of a habeas petition as a "final order").

### I. BACKGROUND

As a result of the events surrounding Daniel Garcia's December 8, 2007 death, Petitioner was charged with: (1) first-degree murder, (2) armed robbery, and (3) being a habitual felon.

*People v. Spencer Lee Williams*, Kent County Circuit Court Case No. 08-07472-FC. On March 3, 2009, the day scheduled for Petitioner's trial in Kent County Circuit Court, Petitioner's counsel indicated that his client intended to plead guilty to second-degree murder (Tr., Dkt 13 at 3). Before making his plea, Petitioner attempted to make a statement, contrary to the advice of both his counsel and the trial court (*id.* at 4). The trial court explained that Petitioner could either plead to second-degree murder, or begin jury selection on first-degree murder (*id.*).

Petitioner responded, "second-degree murder? No, sir. I don't understand how it can become second-degree murder" (Tr., Dkt 13 at 5). With the trial court's permission, the prosecutor put the plea offer on the record (*id.*). The prosecutor told Petitioner that "if you enter a plea to murder second, then we would drop the felony murder and you would have no chance of life without parole, that's gone, and we'd drop the armed robbery and we'd drop the [habitual felon]" (*id.* at 6). The prosecutor also stated that Petitioner was required to "cooperate and testify truthfully" (*id.*). The prosecutor elaborated on both the possible sentencing (*id.* at 6-8) and the required cooperation and testimony (*id.* at 11-13). Petitioner signed an "Advice of Rights" form (Dkt 15) and proceeded to plead guilty to second-degree murder (Tr., Dkt 13 at 15-19). At no time during the March 3, 2009 hearing were the elements of second-degree murder explained to Petitioner, nor does the record demonstrate that Petitioner was previously advised of the elements of second-degree murder.

At sentencing on March 25, 2009, Petitioner moved, through counsel, to withdraw his guilty plea because "he wasn't thinking clearly" (Tr., Dkt 14 at 6). Petitioner asserted that when he entered his March 3, 2009 plea, "I was just sayin' 'Yes, yes,' but basically, sir, I swear to you, I didn't understand a word you were sayin'" (*id.* at 7). The trial court told Petitioner that "[t]he Court made sure you understood what the prosecution's offer was. You agreed to plead guilty to

2

second-degree murder. You were put under oath. You gave testimony that established the factual basis for second-degree murder . . ." (*id.* at 13). The trial court found that Petitioner's "plea was voluntarily made, understanding, knowing, willing, and there would be substantial prejudice to the prosecution . . ." and denied Petitioner's motion to withdraw his plea (*id.*)

Petitioner moved for leave to appeal to the Michigan Court of Appeals, presenting the question, "Did the trial court err in denying Mr. Williams' motion to withdraw his plea where the plea was not knowing and voluntary and where the prosecutor made no showing that the people would suffer substantial prejudice?" (Dkt 1-2 at 7). Citing relevant Supreme Court precedent, Petitioner argued that his allegedly involuntary plea violated "state and federal constitutional due process guarantees" (*id.* at 19-20). The Michigan Court of Appeals denied Petitioner's appeal "for lack of merit in the grounds presented." *People v. Williams*, No. 292308, Order (Mich. Ct. App. July 2, 2009).

Petitioner submitted an application for leave to appeal to the Michigan Supreme Court, making an identical argument (Dkt 18). The Michigan Supreme Court also denied Petitioner's application for leave to appeal. *People v. Williams*, No. 139459, Order (Mich. Nov. 23, 2009).

Petitioner initiated the present habeas proceeding, presenting the same claim he asserted in the state courts. Indeed, Petitioner filed the same brief in the Michigan Court of Appeals, the Michigan Supreme Court, and this Court (Dkts 1-2, 17, 18). The Magistrate Judge issued a Report and Recommendation, recommending that this Court grant Petitioner the requested habeas relief (R & R, Dkt 23). The Magistrate Judge concluded that the trial court's decision that Petitioner's guilty plea was made voluntarily, knowingly, and intelligently is contrary to, and/or involves an unreasonable application of, clearly established federal law as determined by the Supreme Court of

3

the United States. In his Objections, Respondent argues that the claim upon which the Magistrate Judge recommended granting relief was not presented in the petition and was therefore unexhausted (Resp't Obj., Dkt 25 at 6-8). Alternatively, Respondent argues that habeas relief is not warranted, because the Magistrate Judge failed to properly presume that Petitioner was informed of the elements of second-degree murder (*id.* at 9-13) and failed to defer to the determination of the state courts (*id.* at 14).

## II. DISCUSSION

**A.      Exhaustion**

The Magistrate Judge recommends that this Court grant habeas relief on Petitioner's claim "that his decision to plead guilty was not knowing and voluntary" (R & R, Dkt 23 at 6). Respondent contends that this claim was not presented in state court and that Petitioner has therefore failed to exhaust his available remedies (Resp't Obj., Dkt 25 at 6-8). Respondent concedes that Petitioner claimed in state courts that his plea was involuntary, but Respondent argues that Petitioner's claim is exhausted only with regards to Petitioner's argument that his plea was involuntary because he did not understand the possible sentencing (*id.* at 8). Respondent argues that, in order to exhaust the claim examined by the Magistrate Judge, Petitioner was required to demonstrate that he argued that his plea was not voluntary and knowing "because he did not understand the nature or elements of second-degree murder" (*id.* at 7). Respondent's objection lacks merit.

A state prisoner filing a habeas petition must have "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). Exhaustion of state remedies requires that a federal claim be "fairly presented" through "one complete round of the State's established appellate review process." *Williams v. Bagley*, 380 F.3d 932, 967 (6th Cir. 2004) (quoting *O'Sullivan v. Boerckel*,

526 U.S. 836, 845 (1999)). The Supreme Court instructs that "for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts that entitle the petitioner to relief." *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996) (citing *Picard v. Connor*, 404 U.S. 270 (1971)).

The Sixth Circuit has consistently held that "[a] claim is 'fairly presented' where the petitioner 'asserted both the factual and legal basis for his claim to the state courts.'" *Beach v. Moore*, 343 F. App'x 7, 10 (6th Cir. 2009) (quoting *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000)). There are four ways a petitioner can "fairly present" his claim to the state courts:

> (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law.

*Whiting v. Burt*, 395 F.3d 602, 613 (6th Cir. 2005) (quoting *McMeans, supra*).

Petitioner submitted identical briefs before the Michigan Court of Appeals, the Michigan Supreme Court, and this Court (Dkts 1-2, 17, 18). Petitioner's arguments therein are supported with citations to the United States Constitution and federal case law (Dkt 1-2 at 19-20, citing U.S. Const. amend. XIV; *Boykin v. Alabama*, 395 U.S. 238 (1969); and *Machibroda v. United States*, 368 U.S. 487 (1962)). While Petitioner did not rely on state cases employing federal constitutional analysis, Petitioner did allege, with particularity, the denial of a specific constitutional right, to wit: "[a]n involuntary plea violates state and federal due process guarantees" (*id.* at 19). Furthermore, Petitioner alleged facts analogous to Supreme Court cases governing the voluntariness of a plea, and thus alleged facts within the mainstream of constitutional law (*id.* at 9-15). *See, e.g.*, *Henderson v. Morgan*, 426 U.S. 637, 642-43 (1976) (plea was involuntary where "[t]here was no discussion of

the elements of the offense of second-degree murder, no indication that the nature of the offense had ever been discussed with respondent . . .").

The Court finds that although Petitioner's argument in the state courts differs from the analysis of the Magistrate Judge, Petitioner asserted both the legal and factual bases of his claim–an involuntary plea in violation of due process. The Court therefore concludes that Petitioner's claim was fairly presented before the state courts and that the claim is exhausted for purposes of § 2254(b)(1)(A).[1]

**B.**     ***Henderson* Presumption**

Alternatively, Respondent asks this Court to reject the Magistrate Judge's Report and Recommendation for the reason that habeas relief is not warranted. Respondent argues that in concluding that the trial court's decision is contrary to, and/or involves an unreasonable application of, clearly established federal law, the Magistrate Judge improperly declined to apply the presumption set forth in *Henderson*, 426 U.S. at 647, to wit: that "it may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit."

Respondent concedes that the record in this case does not indicate that the trial court explained the elements of second-degree murder to Petitioner (Resp't Obj., Dkt 25 at 10). Respondent also concedes that the record does not indicate that defense counsel expressly stated that he informed Petitioner of the nature and elements of second-degree murder (*id.*). Whereas the

---

[1]Because the Court determines that Petitioner fairly presented his claim in his direct appeal, there is no merit in Respondent's one-sentence argument that Petitioner should also be required to file a post-conviction motion for relief from judgment in order to properly exhaust his claim in state court (Resp't Obj., Dkt 25 at 8).

6

Magistrate Judge determined that "nothing in the record . . . would warrant the presumption that anybody adequately explained to Petitioner the elements or nature of second degree murder" (R & R, Dkt 23 at 10), Respondent would have this Court apply the presumption because there is "nothing in the record that indicates that the presumption that the Supreme Court said was appropriate to apply in most cases should not be applied in this case" (Resp't Obj., Dkt 25 at 10-11). Specifically, Respondent points to (1) the absence of any ineffective-assistance-of-counsel claim; (2) the fact that there is no legal difference between the malice required for first-degree felony murder–the offense with which Petitioner was originally charged–and the malice required for second-degree murder; and (3) the fact that the trial court in this case, unlike the trial court in *Henderson,* did not specifically find that the elements of the crime were not explained to the defendant.

1. *No Ineffective-Assistance-of-Counsel Allegation*

First, Respondent argues that because Petitioner has not lodged an allegation that defense counsel was incompetent, it is "difficult to believe" that defense counsel would not have explained the nature and elements of second-degree murder to Petitioner some time between when the offer was placed on the record at the September 15, 2008 status conference and the March 3, 2009 plea (Resp't Obj., Dkt 25 at 11). Respondent's subjective assessment that defense counsel must have, at some point, explained the nature and elements of second-degree murder to Petitioner does not help to establish that such explanation was given. Respondent's argument amounts to nothing more than speculation.

Indeed, in *Henderson,* the Supreme Court similarly reflected that Henderson's attorneys "were certainly familiar with the intent requirement and evidently were satisfied that the objective

7

evidence available to the prosecutor was sufficiently strong that the requisite intent could be proved beyond a reasonable doubt." *Henderson*, 426 U.S. at 644 n.12. The Court even went so far as to hypothesize that had this precise issue been discussed with the respondent, "his lawyers no doubt would have persisted in their advice to plead guilty," and the respondent "probably would have pleaded guilty anyway." *Id.* The Court concluded that "[s]uch an assumption is, however, an insufficient predicate for a conviction of second-degree murder." *Id.; see also In re Hanserd*, 123 F.3d 922, 927 n.6 (6th Cir. 1997) (holding that the fact that Hanserd had competent counsel did not affect the outcome, because that plea was not made with an adequate understanding of the law, it was not voluntary and did not bar a collateral attack on his § 924(c) conviction).

Similarly, in *Bradshaw v. Stumpf*, 545 U.S. 175 (2005), where the Supreme Court held that the court of appeals erred in concluding that Stumpf was uninformed about the nature of the charge to which he pleaded guilty, the Supreme Court's holding was based not merely on the alleged competence of counsel but on that fact *plus* the fact that the defense attorney represented on the record that his client had been properly informed of the nature and elements of the charge to which he was pleading guilty. *Id.* at 183 ("Where a defendant is represented by competent counsel, the court usually may rely on that counsel's assurance that the defendant has been properly informed of the nature and elements of the charge to which he is pleading guilty."). *Cf. Henderson*, 426 U.S. at 647 (granting relief to the defendant unaware of the elements of his crime, but distinguishing that case from others where "the record contains either an explanation of the charge by the trial judge, or at least a representation by defense counsel that the nature of the offense has been explained to the accused").

Here, as Respondent concedes, defense counsel did not provide, nor did the trial court elicit,

any assurance that Petitioner's plea was informed by an explanation of the elements of the crime to which he was pleading. In other words, Respondent's argument would have this Court not only presume that defense counsel rendered competent assistance but also presume that the assistance rendered included this explanation to Petitioner. The Court is unwilling to extend the *Henderson* presumption this far.

2.  *Waiver of Arraignment*

Respondent next argues that because Petitioner waived arraignment on the Information and pled not guilty to first-degree felony-murder, indicating on the waiver form that he "understands the substance of that charge," the *Henderson* presumption is warranted here because "the malice required for felony-murder ... is the same as that required for second-degree murder" (Resp't Obj., Dkt 25 at 12, citing *People v. Flowers*, 477 N.W.2d 473, 477 (Mich. Ct. App. 1991)).

Where the Sixth Circuit has not accepted a petitioner's plea agreement form as sufficient to forfeit rights under *Henderson*, the Court is not convinced that Petitioner's form waiving arraignment on one charge can properly serve as a substitute for being informed about the nature of another charge. *See Reed v. Sowders*, No. 89-5529 *et al.*, 1990 WL 79215, at *7 (6th Cir. June 12, 1990) (determining that the waiver contained "no notice of the elements of facilitation" and thus "does not stand as independent evidence that appellant knew the elements of the crime").

A contrary conclusion seems especially unwarranted on these facts, which, as the Magistrate Judge points out, could also support a common law voluntary manslaughter charge (R & R, Dkt 23 at 13). The Supreme Court opined in an instructive case that while the nature of a trial court's inquiry must necessarily vary from case to case, "where the charge encompasses lesser included offenses, personally addressing the defendant as to his understanding of the essential elements of

9

the charge to which he pleads guilty would seem a necessary prerequisite to a determination that he understands the meaning of the charge." *McCarthy v. United States,* 394 U.S. 459, 467 n.20 (1969) (discussing the requirements of FED. R. CRIM. P. 11). "In all such inquiries, '[m]atters of reality, and not mere ritual, should be controlling.'" *Id.* (quoting *Kennedy v. United States*, 397 F.2d 16, 17 (6th Cir. 1968)). In short, "[t]here is no adequate substitute for demonstrating in the record at the time the plea is entered the defendant's understanding of the nature of the charge against him." *Id.* at 470.

3. *Distinguishing Henderson*

Last, with regard to the presumption set forth, albeit not applied, in *Henderson*, Respondent emphasizes that the trial court in this case, unlike the trial court in *Henderson,* did not specifically find that the elements of the crime were *not* explained to Petitioner (Resp't Obj., Dkt 25 at 13, citing *Henderson*, 426 U.S. at 647 ("This case is unique because the trial judge found as a fact that the element of intent was not explained to [the defendant].")).

This distinction is not outcome determinative. Indeed, in *Harton v. United States*, No. 97-5266, 1999 WL 96754 (6th Cir. Feb. 2, 1999), where the government urged that a defendant's plea was properly taken because the defendant himself acknowledged that his attorney told him what the government needed to prove beyond a reasonable doubt to establish his guilt, the Sixth Circuit held that "such assurances do not permit district courts to assume *ipso facto* that a defendant enters his plea with a complete understanding of the charges against him." *Id.* at *6 (citing *McCarthy*, 394 U.S. at 464).

**C. Deference**

Last, Respondent argues that this Court should reject the Magistrate Judge's Report and Recommendation because the Magistrate Judge "failed to accord any deference" to the trial court's

decision denying Petitioner's motion to withdraw his plea and "appears to have disregarded the Supreme Court's admonition that the AEDPA standard is 'difficult to meet'" (Resp't Obj., Dkt 25 at 9 & 14, quoting *Harrington v. Richter*, __ U.S. __; 131 S. Ct. 770, 787 (2011)). The Court also rejects this argument.

      The Magistrate Judge painstakingly set forth the proper standard of review in this habeas proceeding (R & R, Dkt 23 at 2-7), specifically indicating that "while neither the Michigan Court of Appeals nor the Michigan Supreme Court addressed the merits of Petitioner's claim, such was addressed by the trial court [and] Petitioner's habeas claim is, therefore, subject to the deferential standard of review" (R & R, Dkt 23 at 6). The Magistrate Judge also pointed out that a writ may not issue simply because the reviewing court concludes, in its independent judgment, that the relevant state-court decision erroneously or incorrectly applied clearly established federal law (*id.* at 4). Other than favoring the ultimate conclusion of the trial court over that recommended by the Magistrate Judge, Respondent does not identify the aspects of the trial court's ruling warranting deference. Indeed, in ruling on Petitioner's motion to withdraw his plea, the trial court did not address or weigh the import of any omissions in the plea inquiry.

      Moreover, the Magistrate Judge acknowledged that in certain circumstances, it *may* be appropriate to simply presume that defense counsel adequately explained to his client the nature of the offense to which he later pleaded guilty (R & R, Dkt 23 at 9). The Magistrate Judge determined that this case did not warrant application of the presumption, and Respondent's objections do not demonstrate any error in the Magistrate Judge's analysis. The Court therefore adopts as its own opinion the Magistrate Judge's conclusion that the trial court's decision that Petitioner's guilty plea was made voluntarily, knowingly, and intelligently is contrary to, and/or involves an unreasonable

application of, clearly established federal law as determined by the Supreme Court.

### III.  CONCLUSION

For the foregoing reasons, the Court denies Respondent's Objections and approves and adopts the Report and Recommendation of the Magistrate Judge as the Opinion of the Court. The petition for a writ of habeas corpus relief is conditionally granted as set forth in the Final Order accompanying this Opinion.


Date: February  23 , 2012                               /s/ Janet T. Neff
                                                        JANET T. NEFF
                                                        United States District Judge